UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| BRIAN KEITH DENNIS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:07CV10 JCH |
| ) | |
| TONY GAMMON, et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Tony Gammon and Bill Bernand's Motion for Summary Judgment, filed February 4, 2009. (Doc. No. 43). The matter is fully briefed and ready for disposition.

## **BACKGROUND**

In April, 2006, Plaintiff Brian Dennis was an inmate with the Missouri Department of Corrections, confined at Moberly Correctional Center ("MCC"). (Defendants Tony Gammon and Bill Bernand's Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 2). During his incarceration at MCC, Plaintiff worked for Missouri Vocational Enterprises ("MVE"), an employment program for inmates, in the sign shop. (Defendants' Facts, ¶ 3, citing Plaintiff's Deposition, attached to Defendants' Motion for Summary Judgment as Exh. A, P. 9). Plaintiff was considered a good employee, and had never been disciplined in his position. (Id., ¶ 36, citing Bernand Affidavit, attached to Defendants' Motion for Summary Judgment as Exh. B, ¶ 7; Exh. A, P. 42). Defendant Bill Bernand ("Bernand") was a Factory Manager II for the MVE sign shop at MCC, responsible for supervising four civilian staff members and up to eighty nine inmates working in the shop. (Id., ¶ 4, citing Exh. B, ¶ 1). Defendant Tony Gammon ("Gammon") was the Superintendent

of MCC. (Id., ¶ 14, citing Exh. B, ¶ 4).

In April, 2006, Plaintiff was working in the shipping department of the sign shop five days a week, from 8:00 a.m. to 3:00 p.m. (Defendants' Facts, ¶¶ 5, 6, citing Exh. A, PP. 10, 12, 34). As an employee of the sign shop, Plaintiff was required to initial a safety rule sheet each day he worked. (Id., ¶ 8, citing Exh. A, PP. 17-18; see also Deposition Exh. A, attached thereto). Safety rule fifteen stated as follows: "Only the operator is allowed on moving equipment at any time." (Defendants' Facts, ¶ 10, citing Exh. A, PP. 17-19, and Deposition Exh. A attached thereto). Prior to the day he was injured, Plaintiff had never complained about the level of safety in the MVE sign shop at MCC, nor was he aware of any such complaints made by others. (Id., ¶ 11, citing Exh. A, PP. 29-30).

On April 24, 2006, Bernand instructed Plaintiff to load cabinets on a trailer. (Defendants' Facts, ¶ 19, citing Exh. A, PP. 46-47).[1] In order to facilitate loading the cabinets, Plaintiff raised a floor jack so that a forklift could lift it onto the trailer. (Id., ¶ 23; see also Exh. A, P. 49). As the forklift lifted the floor jack, Plaintiff hopped on the forks of the forklift, to raise himself to the trailer. (Id., ¶ 24, citing Exh. A, P. 63; see also Exh. A, P. 59). Plaintiff testified he did so because the trailer did not have a handle or step to help an individual climb onto it, and riding the forklift was easier than pulling himself up to the trailer. (Defendants' Facts, ¶¶ 21, 24, citing Exh. A, PP. 55, 59, 63). Plaintiff further testified that he had done this before, and considered it a safe practice.[2] (Id., ¶¶ 25, 27, citing Exh. A, PP. 62, 63).

While on the forks of the forklift, Plaintiff placed one hand near the chain that raises the forks, and the other on the floor jack. (Defendants' Facts, ¶ 28, citing Exh. A, P. 53). Plaintiff testified that

---

[1] Plaintiff testified Bernand gave no instruction regarding the manner in which he was to perform the job. (Defendants' Exh. A, P. 47).

[2] Prior to Plaintiff's injury, Bernand had on occasion corrected MVE employees regarding riding on forklifts. (Defendants' Facts, ¶ 37; Exh. B, ¶ 8).

he knew the chain was there, but, "wasn't aware that [his] hand would be on the chain." (Id., ¶ 29, citing Exh. A, P. 70). As the forklift lifted Plaintiff, his right index finger got caught in the chain, and was severed at the first joint. (Id., ¶ 32, citing Exh. A, PP. 73-74; Plaintiff's Amended Complaint ("Compl."), Doc. No. 26, ¶ 4). According to Defendants, Bernand was facing the other direction as Plaintiff was being lifted by the forklift, and turned around just as Plaintiff sustained his injury. (Defendants' Facts, ¶¶ 30, 31, citing Exh. A, PP. 54, 72; Exh. B, ¶ 6).[3]

Plaintiff filed his original Complaint in this matter on February 5, 2007. (Doc. No. 1). In the instant Amended Complaint, filed July 23, 2008, and brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants Gammon and Bernand violated his constitutional rights, by requiring him to work in unsafe conditions. (Doc. No. 26). As stated above, Defendants filed the instant Motion for Summary Judgment on February 4, 2009. (Doc. No. 43).

## SUMMARY JUDGMENT STANDARD

---

[3] During his deposition, Plaintiff confirmed that Bernand turned just as he sustained his injury, as follows:

> Q: Where was he [Bernand]?
> A: He was standing at the front--in the back, excuse me, at the back of the trailer, with his back looking inside the trailer, smoking a cigarette.
> Q: So, while you're doing this, he's looking inside the trailer at the guy that was under you. Is that correct?
> A: Yes.
> Q: So, he's not facing you; alright....
> Q: So, it was just as Bill [Bernand] was turning around, is that when you got hurt?
> A: Yes. Well, he turned around before because he heard us coming. He heard the forklift coming and he turned and he was backing away from the trailer to get out of our way.
> Q: So, he turns around, looks at you as you're being lifted up. Is that correct?
> A: Yes.
> Q: Then, you got hurt, pretty much?
> A: Yes.
> Q: So, all this is a matter of seconds, is that correct?
> A: Yes.

(Defendants' Exh. A, PP. 54, 72-73).

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>.

A moving party always bears the burden of informing the Court of the basis of its motion. <u>Celotex</u>, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. <u>Anderson</u>, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>Id</u>. at 249.

## **DISCUSSION**

The Eighth Amendment requires prison officials to provide humane conditions of confinement. <u>Aswegan v. Henry</u>, 49 F.3d 461, 463 (8th Cir. 1995). Under Eighth Circuit law, "[p]rison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment." <u>Choate v. Lockhart</u>, 7 F.3d 1370, 1373 (8th Cir. 1993) (citation omitted). "To

succeed on an Eighth Amendment claim under this standard, Plaintiff must demonstrate (1) that the conditions were objectively sufficiently serious or caused an objectively serious injury to him, and (2) that Defendants were deliberately indifferent, or acted with reckless disregard, to inmate constitutional rights, health, or safety." Anderson v. Larkins, 2008 WL 4965842 at *6 (E.D. Mo. Nov. 18, 2008) (citations omitted).

> Precisely what constitutes deliberate indifference on the part of prison officials has been the subject of some debate. It is at least clear that mere negligence or inadvertence is insufficient to satisfy this standard. Indeed, deliberate indifference requires the unnecessary and wanton infliction of pain. In the work assignment context, prison officials are deliberately indifferent when they knowingly...compel convicts to perform physical labor...which is beyond their strength, or which constitutes a danger to their...health, or which is unduly painful. Thus, whatever its exact contours, deliberate indifference requires a highly culpable state of mind approaching actual intent.

Choate, 7 F.3d at 1374 (internal quotations, citations and footnote omitted).

### A. Defendant Bernand

As stated above, in his Amended Complaint Plaintiff complains that Bernand violated his Eighth Amendment right to be free from cruel and unusual punishment, by requiring him to work in unsafe conditions. Upon consideration, the Court finds even assuming, arguendo, that Plaintiff has established the existence of a sufficiently serious condition in his workplace, he cannot show Defendant Bernand exhibited deliberate indifference to that condition, for several reasons. First, with respect to Plaintiff himself, it is undisputed Bernand did not know of the danger until seconds before the accident, at best. Bernand thus had no opportunity to prevent Plaintiff's injury, and cannot be held to have acted with deliberate indifference in that regard.[4]

---

[4] The Court finds Bernand did not demonstrate deliberate indifference by failing to watch Plaintiff perform his assigned task either, as it is undisputed Plaintiff was considered a careful employee who generally followed the safety rules, one of which stated that only the operator was allowed on moving equipment.

In light of the foregoing, Plaintiff can prevail only by demonstrating Bernand was deliberately indifferent to the welfare of all inmates in the sign shop. <u>Choate</u>, 7 F.3d at 1375. This would require a showing that Bernand knew of an extreme danger at the worksite, but ignored the hazard. <u>Id.</u> The evidence before the Court falls far short of establishing deliberate indifference, however. For example, it is undisputed that Plaintiff was required to initial a safety rule sheet each day he worked[5], and that one safety rule warned only the operator was allowed on moving equipment at any time. (Defendants' Facts, ¶ 8, citing Exh. A, PP. 17-18; <u>see also</u> Deposition Exh. A, attached thereto). Furthermore, Plaintiff acknowledged that prior to the day he was injured, he had never complained about the level of safety in the MVE sign shop at MCC, including that with respect to riding the forks of a forklift, nor was he aware of any such complaints made by others. (<u>Id.</u>, ¶ 11, citing Exh. A, PP. 29-30). Finally, Bernand testified that he had on occasion corrected MVE employees regarding riding on forklifts prior to Plaintiff's injury, thus demonstrating his safety consciousness with respect to the very hazard at issue. (Defendants' Facts, ¶ 37; Exh. B, ¶ 8). In light of these circumstances, the Court finds Plaintiff fails to create a genuine issue with respect to deliberate indifference to a serious issue of work place safety, and so Defendant Bernand's Motion for Summary Judgment must be granted. <u>Choate</u>, 7 F.3d at 1375.[6]

**B.  Defendant Gammon**

As stated above, during the relevant time period Gammon was the Superintendent of MCC. (Defendants' Facts, ¶ 14, citing Exh. B, ¶ 4). "Supervisors are not liable for Eighth Amendment

---

[5] The safety procedures were modeled as closely as possible to those in the private industry, while still maintaining the security of the institution. (Defendants' Exh. B, ¶ 2).

[6] The Court finds the evidence presented by Plaintiff as to the working conditions at the MVE sign shop at most demonstrates Bernand was negligent, and as stated above, negligence is not enough to establish a constitutional violation. <u>Stephens v. Johnson</u>, 83 F.3d 198, 201 (8th Cir. 1996).

claims brought under section 1983 on a respondeat superior theory." Choate, 7 F.3d at 1376 (internal quotations and citations omitted). Rather, "[t]o establish a claim of supervisory liability, the plaintiff must show that the supervisor was personally involved in the constitutional violation or the supervisor's inaction amounted to "deliberate indifference" or "tacit authorization" of the violative practices." Houston v. Dwyer, 2008 WL 4279578 at *11 (E.D. Mo. Sep. 15, 2008) (citations omitted). Gammon is not liable here under either theory, as it is undisputed Gammon was not involved in the day-to-day operations at the MVE sign shop, including making job assignments, determining the manner in which work was to be performed, or formulating and implementing safety rules.[7] (Defendants' Exh. B, ¶ 4). On the contrary, Bernand testified he neither reported to Gammon, nor conferred with him with respect to any aspect of his job duties. (Id.). Plaintiff thus cannot establish Defendant Gammon was, "involved in any constitutional violation or that he showed tacit authorization of any violative practice." Houston, 2008 WL 4279578 at *11. Defendant Gammon's Motion for Summary Judgment must therefore be granted.[8]

---

[7] Plaintiff apparently acknowledges Gammon's lack of involvement, as he testified he only named Gammon in this suit because he felt that as Superintendent, Gammon should be responsible for everything that went on in the prison. (Defendants' Facts, ¶ 34, citing Exh. A, P. 80).

[8] In light of the Court's above ruling, it need not address Defendants' assertion that they are protected by qualified immunity.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Tony Gammon and Bill Bernand's Motion for Summary Judgment (Doc. No. 43) is **GRANTED**, and Plaintiff's claims against Defendants Gammon and Bernand are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 4th day of May, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE